IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LESTER WILSON** | : | CIVIL ACTION |
| *Plaintiff, pro se* | : | |
| | : | NO. 19-0192 |
| **v.** | : | |
| | : | |
| **SUPERINTENDENT TAMMY FERGUSON** | : | |
| | : | |
| *Defendant* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                               SEPTEMBER 30, 2021

## MEMORANDUM OPINION

**INTRODUCTION**

Plaintiff Lester Wilson ("Plaintiff"), proceeding *pro se*, filed this civil action pursuant to 42 U.S.C. § 1983, initially against numerous defendants. He later amended the complaint ("operative complaint"), [ECF 8], and named as defendant Phoenix/Graterford State Correctional Institution ("SCI") Superintendent Tammy Ferguson ("Defendant" or "Superintendent Ferguson").[1] In the operative complaint, Plaintiff averred that he has a special dietary consideration for a 'no-rice' diet, and sought both injunctive relief and monetary compensation for injuries allegedly suffered due to Defendant's failure to adequately respond to or address his grievances regarding his meals and the exposure and/or the risk of exposure to rice, a food item to which he is allergic. Plaintiff contends that Defendant violated his Eighth Amendment rights.

---

[1] In Plaintiff's original complaint, [ECF 2], Pennsylvania Department of Corrections Secretary "Mr. Wetzal," Kitchen Supervisor and Culinary Director "Mr. Cotton," and Kitchen Supervisor and Culinary Director "Mr. Kline" were named defendants. Plaintiff did not include these three defendants in his operative complaint. He did, however, include the Department of Corrections Central Office (the "DCCO"), but this Court dismissed the DCCO as a defendant, [ECF 9], because the DCCO may not be sued under 42 U.S.C. § 1983 as it "shares in the Commonwealth's Eleventh Amendment immunity." *Lavia v. Pa. Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000) (dismissing DCCO as a defendant to a § 1983 action).

1

Thereafter, Defendant filed a motion to dismiss Plaintiff's request for injunctive relief, (which this Court granted), and Plaintiff's request for damages, (which this Court denied).

Before this Court is Defendant's motion for summary judgment premised on, *inter alia*, (1) Plaintiff's failure to exhaust his claim for monetary compensation and (2) Defendant's qualified immunity defense. [ECF 38]. Plaintiff has opposed the motion. [ECF 39]. The issues raised in Defendant's motion have been fully briefed and are ripe for disposition. For the reasons set forth herein, Defendant's motion is granted.

**BACKGROUND**

When ruling on a motion for summary judgment, a court must consider all record evidence and supported relevant facts in the light most favorable to the non-movant, here Plaintiff. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Galena v. Leone*, 638 F.3d 186, 196 (3d Cir. 2011). The relevant facts are summarized as follows:[2]

> Plaintiff has been incarcerated since 2011. Plaintiff suffers from a severe rice allergy and has received a special no-rice diet pursuant to a medical order. Prior to his incarceration, on two occasions, Plaintiff was hospitalized due to a rice allergic reaction. Plaintiff describes his allergic reactions as one of feeling as if he is having a heart attack, getting a lump in his throat, dizziness, difficulty breathing, swelling in the eyes, and high blood pressure.
>
> As a result of his known allergy, the correctional system provided Plaintiff with a "diet order form" during his incarceration. This diet order form allowed Plaintiff to be served meals without rice. Despite using the diet order form for his known allergy, on a number of occasions, Plaintiff was provided meals that contained rice. On some of those occasions, the presence of rice was not immediately evident, and Plaintiff ate the meal and experienced allergic reactions that required him to obtain medical care from the prison dispensary and infirmary. One such occasion resulted in Plaintiff's admission to the prison infirmary for three to four days.
>
> On another occasion, Plaintiff and his cellmate were served rice while in their cell, causing Plaintiff to suffer an allergic reaction, which required him to

---

[2] The facts set forth herein are gleaned from the exhibits attached to the operative complaint, [ECF 8], the motion for summary judgment, [ECF 38], and the response thereto, [ECF 39].

2

receive an injection of Benadryl. During this particular incident, the prison was on emergency lockdown when prison staff delivered the meal to the cells. Although Plaintiff notified the prison staff who were delivering the meal that he was allergic to rice, the prison staff nevertheless placed two trays with steaming rice in his cell. Despite attempting to cover his head to avoid the steam, Plaintiff suffered an allergic reaction and had to be taken to the infirmary. His symptoms then included swelling under the eyes, swelling in the throat, and high blood pressure.

Because of these occurrences, Plaintiff filed five grievances in 2018, which were each denied at the initial review stage. Plaintiff appealed three of the five grievances to Superintendent Ferguson. It appears he appealed some, but not all of his grievances to the Secretary's Office of Inmate Grievances & Appeals. Significantly, none of the initial grievances included a request, demand, or claim for compensation and/or monetary damages.

Plaintiff filed one of his grievances following the incident in which he and his cellmate were served rice in their cell during a prison lockdown. The written response denying this grievance indicated that no one else in the institution was receiving a no-rice diet and that, in the event of a lockdown, the cellmate would be served the same meal that was served to the rest of the prison population. On January 25, 2019, Superintendent Ferguson upheld the denial of this grievance. In her decision, Superintendent Ferguson wrote that Plaintiff should try to resolve any relevant concerns with his Unit Management Team.[3]

**LEGAL STANDARD**

Federal Rule of Civil Procedure ("Rule") 56 governs summary judgment motion practice. Fed. R. Civ. P. 56. Specifically, Rule 56 provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* at 56(a). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Under Rule 56, the court must view the evidence in the light most favorable to the nonmoving party, here Plaintiff. *Galena*, 638 F.3d at 196.

---

[3] On an unknown date, Plaintiff requested and was transferred to SCI Rockview.

Under Rule 56, the movant bears the initial burden of informing the court of the basis for the motion and identifying those portions of the record which the movant "believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden can be met by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case." *Id.* at 322. After the movant has met its initial burden, summary judgment is appropriate if the nonmoving party fails to rebut the moving party's claim by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" that show a genuine issue of material fact or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P 56(c)(1)(A)–(B). The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party may not rely on "bare assertions, conclusory allegations or suspicions," *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982), nor rest on the allegations in the pleadings. *Celotex*, 477 U.S. at 324. Rather, the nonmoving party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (citations omitted).

**DISCUSSION**

The Prison Litigation Reform Act (the "PLRA"), 42 U.S.C. § 1997e, applies to civil rights actions brought by prisoners regarding prison conditions and provides, in part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such

4

administrative remedies as are available are exhausted." *Id.* Exhaustion, therefore, is a threshold issue that district courts must consider before reaching the merits of a prisoner's civil rights claim. *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 304–05 (3d Cir. 2020) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006); *Rinaldi v. United States*, 904 F.3d 257, 265 (3d Cir. 2018) ("Exhaustion is thus a non-jurisdictional prerequisite to an inmate bringing suit and, for that reason, as we held in *Small v. Camden County*, it constitutes a 'threshold issue that *courts* must address to determine whether litigation is being conducted in the right forum at the right time.'") (citations omitted). Administrative exhaustion, however, is an affirmative defense, meaning the defendant must plead and prove it. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Pinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018) (citing *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002)).

Here, the administrative remedies that are available to Plaintiff are outlined in the *Inmate Grievance System Procedures Manual* ("the Manual"),[4] in effect in the Commonwealth of Pennsylvania since February 16, 2016. DC-ADM 804, 1-1. The Manual details the procedural requirements that Plaintiff needed to follow to administratively exhaust his § 1983 claim. In its relevant part, the Manual provides that, "[i]f the inmate desires compensation or other legal relief normally available from a court, the inmate must request the specific relief sought in his/her initial grievance." *Id.* at 1-2. Since the Manual requires an inmate to request compensation in the initial grievance, an inmate who fails to do so has defaulted on any claim for money damages subsequently brought in a court. *Wright v. Sauers*, 729 F. App'x 225, 227 (3d Cir. 2018) (affirming grant of summary judgment against prisoner who was seeking monetary damages in a § 1983 claim because prisoner failed to seek such damages in initial administrative grievance); *see also Booth v. Churner*, 532 U.S. 731, 734 (2001) (holding that prisoner seeking money damages must

---

[4] The *Inmate Grievance System Procedures Manual* is found in the same document as an *Inmate Grievance System Policy*, which comprises pages one through three of the thirty-five-page document.

complete prison administrative process even if the administrative process could not provide the monetary damages subsequently sought in court); *Hobson v. Tiller*, 2021 WL 2191282, at *1, *8 (W.D. Pa. May 6, 2021), *report and recommendation adopted*, 2021 WL 2190818, at *1 (W.D. Pa. May 31, 2021) (granting correction official's motion for summary judgment because prisoner failed to request monetary compensation in the initial grievance); *Harvey v. Cline*, 2021 WL 1627766, at *1, *8, (M.D. Pa. Apr. 27, 2021) (same); *Krushin v. SCI Waymart*, 2019 WL 1141691, at *1 (M.D. Pa. Jan. 29, 2019), *report and recommendation adopted*, 2019 WL 1099002, at *1 (M.D. Pa. Mar. 8, 2019) (same); *Tillery v. Wetzel*, 2019 WL 480485, at *1, *6 (M.D. Pa. Feb. 7, 2019) (same).

Here, it is undisputed that Plaintiff did not request money damages in any of his initial grievances. Thus, having failed to request monetary compensation in any of his initial grievances, Plaintiff has defaulted on any monetary claim before this Court by not having exhausted his administrative remedies, as required, with respect to his remaining § 1983 claim for monetary relief. Accordingly, Defendant's motion for summary judgment is granted.[5] In light of this determination, this Court need not address Defendant's argument for qualified immunity.

**CONCLUSION**

For the reasons set forth above, Plaintiff has failed to exhaust his administrative remedies. Accordingly, Defendant's motion for summary judgment is granted on this basis. An Order consistent with this Memorandum Opinion follows. *NITZA I. QUIÑONES ALEJANDRO, J.*

---

[5] To the extent that Plaintiff asserts a claim against Defendant based merely on the review and denial of grievances or based on the administrative exhaustion procedure itself, such a claim is not cognizable under § 1983. *Hayes v. Gilmore*, 802 F. App'x 84, 87–88 (3d Cir. 2020) (determining that prisoner had "no freestanding claim based on the denial of grievances" and that the denial of grievances does not establish personal involvement) (citations omitted); *Foye v. Prime Care Med., Inc.*, 2015 WL 1650257, at *9 (E.D. Pa. Apr. 14, 2015) (finding that rejection of grievances on legitimate procedural grounds does not implicate the Eighth Amendment).